Keith D. CHAMPLAIN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 65S00–9603–CR–237.

Supreme Court of Indiana.

June 13, 1997.

Dennis L. Brinkmeyer, Evansville, for appellant.

Pamela Carter, Attorney General, Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for appellees.

BOEHM, Justice.

A jury convicted Keith D. Champlain of the murder [1] of Sherri Reeves Vanlue. The trial court sentenced Champlain to sixty-five years in prison. In this direct appeal, Champlain presents several issues for our review. Because we reverse on the first question presented, we address only the following:

I. Did the trial court err in refusing to instruct the jury on reckless homicide, voluntary manslaughter, and involuntary manslaughter?

II. Was there sufficient evidence to support the conviction?

We hold that the trial court erred when it refused to give Champlain's tendered instruction on reckless homicide. Accordingly, we reverse and remand for a new trial.

### Factual and Procedural Background

This case arose out of an altercation in a trailer park near Mt. Vernon, Indiana on the

---

**1.** IND.CODE § 35–42–1–1 (1993).

night of July 12–13, 1995. The victim, Sherri Vanlue, had apparently been romantically involved with defendant Keith Champlain but was dating Justin Jamison at the time she was killed. Several witnesses offered accounts of the events.

*Jamison's Testimony*

According to Jamison's account, Champlain had called Vanlue three times earlier that evening "making threats," and Vanlue had taken her phone off the hook after the third call. Some time around midnight, Jamison and Vanlue were in bed in Vanlue's trailer when they heard a car skid to a halt outside. Both got out of bed when a person who later proved to be Champlain banged on the trailer door and said: "Do you want to die? I am going to blow the . . . lock off of the door. I am going to kill you." Record at 832. Jamison had never met the defendant, but he assumed at the time it was Champlain. Vanlue said in the direction of the door: "Go away. I am tired of this. I am going to call the cops." Record at 833. As Vanlue asked Jamison to call 911, a single shot was fired through the door. Record at 848. Jamison testified that he saw pellets from the shot strike Vanlue. She fell immediately to the floor, crying out: "Oh my God, Justin, he just shot me." Record at 835, 851. At the time Vanlue was shot, Jamison testified that she was standing "right in the middle of the room" and "right in front of the door." [2] Record at 835, 849. Vanlue died from a single wound a short time later. Jamison watched these events "in amazement" and called 911 for police assistance. Record at 836. Vanlue's two young boys were also in the trailer at the time she was shot.

A second shot was fired no more than thirty seconds after the first and the defendant "kicked the door in, or somehow he was bashing the door in." Record at 835. Jamison, who got through to 911 after the second shot, put the receiver on the bed and said: "Man, what in the hell are you doing? I don't understand." Record at 837. The defendant stuck a shotgun into Jamison's stomach and kept repeating: "You are going to die tonight." Record at 838. Jamison testified that he pushed the gun away, threw Champlain across the room and kicked him in the head, knocking him temporarily unconscious. Jamison then took the gun away from the defendant and returned to the telephone to speak with the 911 operator.[3] When Champlain attempted to get up, Jamison told him to "stay down" and, holding the gun by the barrel, beat Champlain with the stock of the shotgun, causing it to break and the gun to discharge between Jamison's legs. After subduing Champlain, Jamison went outside to seek assistance.

*Gini Eatan*

A neighbor of Vanlue's, Gini Eatan, had a partially obstructed view of these events from her nearby trailer. She offered a different account. Eatan went to sleep around 10:30 p.m. but was awakened approximately two hours later by a banging noise followed by a gunshot. She heard a second shot and looked out her window toward Vanlue's trailer. Eatan saw a man she later identified as Jamison beating the defendant with a shotgun in Vanlue's doorway, telling him to "[s]tay laying down." Record at 769. Jamison disappeared briefly from view, reappeared in the doorway, and then resumed the assault. Jamison put the shotgun to his shoulder, fired one "level" shot towards the

---

2. Although several witnesses throughout the trial referred to a diagram of the trailer in discussing the events of that night, the precise positioning of Vanlue, Champlain, and Jamison at the time of the shooting is unclear from the record.

3. The 911 operator, police dispatcher Terry Cooper, received Jamison's call at 12:06 or 12:07 a.m. and spoke with him for approximately 10–12 minutes. During that time, Jamison remained on the line but left the phone three times, at least once to subdue Champlain. Cooper's account is consistent with the investigating officers', who testified that they arrived at the trailer around 12:20 a.m. At that point Jamison told Cooper "they are here" and laid the phone down but did not hang up. Cooper was unable to record the conversation due to a malfunction in the taping system but testified generally consistent with Jamison's account. Although Cooper could hear Jamison beating a person later identified as Champlain, Cooper testified that he did not hear a gunshot. Record at 532–37. Cooper was in radio communication with police officers during the conversation with Jamison, but it is unclear whether Cooper was continuously on the line with Jamison or was interrupted to speak on other lines.

living room in Vanlue's trailer, and beat the defendant again with the butt of the gun. This third shot was the first Eatan testified she had actually seen. She was able to view the altercation because she was no more than twenty feet from Jamison, several lights were on in Vanlue's trailer, and the door to the trailer remained open. Eatan also testified that she saw a "shadow" through the venetian blinds on one of the windows and that Jamison fired the shot in the direction of the shadow. After this shot, Eatan saw the shadow drop and heard what she believed to be a female voice utter a "very short muffled scream." Record at 812. Jamison pumped the gun and pulled the trigger again, causing a "click" of the trigger but no discharge. Eatan never saw a shot discharge through Jamison's legs.

*Officer Michael Ricketts*

The police soon arrived and, seeing Jamison holding the gun, placed him under arrest. Police officer Michael Ricketts asked the still-prostrate Champlain what had happened, and he mumbled: "The bitch lied to me, so I shot her." Ricketts asked again: "You shot her?" and the defendant replied: "Yes, I shot her." [4] Record at 630.

*Vanlue's Brother*

Sherri Vanlue's brother, Kevin Reeves, testified that Champlain told him earlier that evening in a phone conversation that (1) he had a loaded shotgun; (2) he was going to kill Vanlue, her two children, and Jamison; and (3) he was going to kill himself.

*Champlain's Statements in the Ambulance and at the Hospital*

Champlain was badly beaten and was taken to a hospital for medical attention. On the way, he told an emergency medical technician that he had fired the shotgun three times, but did not know if he had shot anyone. The defendant also referred to the dispute as a "lover's quarrel" and "continuously asked" how Vanlue was doing. Record at 653. He repeated the gist of these statements to another paramedic during the ambulance ride. Record at 660. At 1:40 a.m., Champlain's blood alcohol content was measured at 0.15% and 0.19% by two different methods. Record at 710–11. An emergency room nurse who treated Champlain around 2 or 3 a.m. at the hospital testified that Champlain told him: "Well, I was upset with this girl and I shot her through the door to get in the house," and, "Well, I just wanted to scare her. I didn't know she was behind the door." Record at 701, 706. The defendant also told the nurse in essence that he shot the lock off the door to get in the "house" because it was locked and that he "didn't mean to shoot her." Record at 707. Around 4:30 a.m., a police officer went to Champlain's hospital room to arrest him for the murder. As the officer turned to leave the room, the defendant—who had known for at least fifty minutes that Vanlue was dead—volunteered: "I didn't mean to kill her." Record at 690–91. Champlain's statements were admitted via the testimony of others and he did not testify in his own defense at trial.

Champlain was charged with Vanlue's murder and convicted. He appeals. This Court has jurisdiction under Indiana Appellate Rule 4(A)(7).

## I. Jury Instructions on Lesser Included Offenses of Murder

Champlain asserts that the trial court committed reversible error when it refused to instruct the jury on reckless homicide, voluntary manslaughter, and involuntary manslaughter. As explained below, we agree as to reckless homicide and grant Champlain's request for a new trial.

### A. Test applied by the trial court

 When asked to instruct the jury on a lesser included offense, trial courts are to apply the test set forth in *Wright v. State*, 658 N.E.2d 563 (Ind.1995). First, the trial court must determine whether the lesser offense is either "inherently" or "factually" included in the crime charged. *Id.* at 566–67. If either of these prerequisites is met, the question whether to give the instruction hinges on the evidence presented by both parties. More precisely, as we explained in *Wright:*

---

4. Ricketts testified on cross-examination that Champlain actually said: "The bitch lied to me, so I shot her through the door, but I didn't kill her." Record at 636–37.

If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Id.* at 567 (citations and footnote omitted). We will review a trial court's factual finding—where one is made—on the existence or lack of a "serious evidentiary dispute" for an abuse of discretion. This deference reflects and recognizes the trial court's proximity to the evidence. Nonetheless, *Wright* clearly dictates that reversal is required if the trial court wrongly concludes that no serious evidentiary dispute exists and refuses to give an instruction on a lesser included offense. If the trial court makes no ruling as to whether a serious evidentiary dispute exists, *Wright* implicitly requires the reviewing court to make this determination de novo based on its own review of the evidence. *See, e.g., Brown v. State,* 659 N.E.2d 652, 656–57 (Ind.Ct.App. 1995) (applying *Wright* in reversing conviction for failure to instruct the jury on reckless homicide and involuntary manslaughter), *trans. denied.* We now examine the evidence in this case with these guidelines in mind.

B. *Champlain's reckless homicide instruction*

■ The first part of the *Wright* test is satisfied here because reckless homicide is an inherently included lesser offense of murder. *Wright,* 658 N.E.2d at 567. The only difference between reckless homicide and murder is the mens rea the State must prove to obtain a conviction. Murder occurs when the defendant "knowingly or intentionally kills another human being." IND.CODE § 35–42–

1–1 (1993). A person engages in conduct "knowingly" if the actor is aware of a high probability that he or she is doing so. IND. CODE § 35–41–2–2(b) (1993). Reckless homicide, by contrast, requires proof that the defendant "recklessly" killed another human being. IND.CODE § 35–42–1–5 (1993). A person engages in conduct "recklessly" if he or she engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. IND.CODE § 35–41–2–2(c) (1993). Accordingly, the issue becomes whether there was a serious evidentiary dispute over whether Champlain "knowingly" killed Vanlue, i.e., with an awareness of a high probability that he was doing so.[5] *Wright,* 658 N.E.2d at 567.

Rather than making findings on this point, the trial court refused to give Champlain's reckless homicide instruction on the ground that Champlain's theory of the case was inconsistent with a conviction for a lesser offense. In a colloquy with the court, defense counsel conceded that Champlain's strategy was to pin the murder on Jamison. The trial court reasoned that this theory was inconsistent with offering an alternative defense implicitly conceding Champlain's involvement in a criminal act, but with a lower degree of mental culpability. The trial court analogized the situation to rape cases in which an instruction on the victim's consent is properly refused if the defendant denies being the perpetrator. Similarly, some of our cases have suggested that an instruction for reckless homicide is appropriately refused where the accused asserts a claim of self-defense. *See, e.g., Bolin v. State,* 544 N.E.2d 1372, 1374 (Ind.1989). Assuming without deciding that it is within the trial court's discretion to refuse to instruct on affirmative defenses if they are inconsistent with the defense's contentions, the issue in this case is whether an instruction is required when there is a serious evidentiary dispute as to an element of the State's case in chief.

5. We do not explore whether Champlain "intentionally" killed Vanlue because the information in this case alleged only that Champlain "knowingly" did so. Record at 17. Proof beyond a reasonable doubt of either mens rea suffices to convict of murder. IND.CODE § 35–42–1–1 (1993).

■ Here the evidence as to Champlain's mens rea is murky. The evidence showed that Champlain banged on the door of Vanlue's trailer and said: "Do you want to die? I am going to blow the ... lock off the door. I am going to kill you." Soon thereafter, Champlain fired two shots into the trailer at close range. According to Jamison, the first shot struck Vanlue. Certainly the jury could have found based on this testimony that Champlain formed the requisite intent for murder before he got to the trailer, and maintained that intent after he arrived. However, the evidence could have supported a finding that Champlain acted "recklessly" rather than "knowingly" when he fired the fatal shot. Champlain disclaimed an intent to kill after he was arrested later that night, asserted that he was unaware Vanlue was on the other side of the door, and claimed to be firing at the lock.[6] Because Champlain stated just before the shooting that he was going to blow the lock off the door, the jury could have found that the shot that killed Vanlue was fired for this purpose and not to hit her. The physical evidence would not have precluded this finding. A firearms expert who examined the gun, the door, and the lock estimated that Champlain fired the weapon "directly against the door knob assembly" or, at most, three feet from the door; and that, based on the results of a lead test, a gunshot appeared to have struck the lock itself. Record at 1037–38. Based on the dispersion pattern of the shot that struck Vanlue, the expert also estimated that Vanlue was three to nine feet from the gun at the time it was fired. Record at 1039–40.

■ Depending on how the jury weighed and credited all of this evidence, the jury could have returned with a conviction for reckless homicide. Firing only to blow open the lock or mindlessly through a closed door is surely in "plain, conscious, and unjustifiable disregard" of the harm that might result to Vanlue and a "substantial deviation from acceptable standards of conduct," but may not be viewed by the jury as knowing or intentional killing. IND.CODE § 35–41–2–2(c) (1993); *see Nordstrom v. State,* 627 N.E.2d 1380, 1383 (Ind.Ct.App.1994) (defendant shot wife at close range allegedly believing gun would not discharge; reckless homicide proved beyond a reasonable doubt), *trans. denied.* Under these facts it was for the jury to decide whether, if he fired the shot that killed Vanlue, Champlain was reckless or was actually aware of a high probability that he was firing at Vanlue, or intentionally shot her. This ambivalence raises a serious evidentiary dispute over whether Champlain knowingly killed Sherri Vanlue even if the jury concludes, as it did, that he was the shooter. Accordingly, his conviction must be reversed and a new trial held. *Wright,* 658 N.E.2d at 567. One lesson to take from this case is that "when the question to instruct on a lesser included offense is a close one, it is prudent for the trial court to give the instruction and avoid the risk of the expense and delay involved in a retrial." *Griffin v. State,* 644 N.E.2d 561, 563 (Ind.1994) (murder conviction reversed for failure to instruct jury on voluntary manslaughter).

## C. *Voluntary manslaughter*

■ Champlain also contends the trial court erred in refusing to instruct the jury on voluntary and involuntary manslaughter. Voluntary manslaughter is an inherently included lesser offense of murder because it

---

**6.** A verbal denial of the requisite criminal intent does not *ipso facto* create a "serious evidentiary dispute" within the meaning of *Wright.* The other evidence may unequivocally show sufficient intent to commit the crime charged. *Compare Heavrin v. State,* 675 N.E.2d 1075, 1078 (Ind. 1996) (defendant denied intent to kill, but evidence that he strangled victim and that death occurred by strangulation supported finding that no serious evidentiary dispute existed as to whether defendant knew he was engaged in killing), *reh'g denied and Lynch v. State,* 571 N.E.2d 537, 539–40 (Ind.1991) (person who fires gun into abdomen of victim at point blank range is aware of high probability of a fatality despite verbal disclaimer to the contrary) (Shepard, C.J., dissenting) *with Sharkey v. State,* 672 N.E.2d 937 (Ind.Ct.App.1996) (trial counsel ineffective for failing to request reckless homicide instruction where defendant denied intent to kill), *trans. denied and Porter v. State,* 671 N.E.2d 152, 154 (Ind.Ct.App.1996) (in prosecution for attempted murder, trial court properly instructed jury on battery with a deadly weapon because defendant denied intent to kill; jury had to decide whether defendant's version of events was credible), *trans. denied.*

requires proof of the same material elements of murder. *Id.* at 562; *compare* IND.CODE § 35–42–1–1 (1993) *with* IND.CODE § 35–42–1–3 (1993). Voluntary manslaughter is a knowing or intentional killing committed while acting under "sudden heat," which is a mitigating factor and not an element of the crime. *Isom v. State,* 651 N.E.2d 1151, 1152 (Ind.1995), *reh'g denied.* Sudden heat has been defined as "sufficient provocation to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, or terror, and that such excited emotions may be sufficient to obscure the reason of an ordinary man." *Fox v. State,* 506 N.E.2d 1090, 1093 (Ind.1987). The jury should be instructed on voluntary manslaughter "if there is any appreciable evidence of sudden heat." *Griffin,* 644 N.E.2d at 562 (internal quotation marks and citation omitted). However, evidence merely. of anger or words alone cannot support a jury instruction on voluntary manslaughter. *Matheney v. State,* 583 N.E.2d 1202, 1205 (Ind.1992), *cert. denied,* 504 U.S. 962, 112 S.Ct. 2320, 119 L.Ed.2d 238.

Here the trial court specifically found that there was insufficient evidence of provocation to warrant an instruction on voluntary manslaughter. This finding is not an abuse of discretion. If anything, the evidence in this case suggests that Champlain acted with some premeditation. Champlain called Vanlue's brother and expressed an intent to kill Vanlue, drove to Vanlue's trailer with a loaded gun, and verbally repeated his intent to kill while standing outside her door. In telling Champlain to leave after he threatened her, Vanlue was not provocative and certainly was not threatening. Indeed, all Champlain can point to on this issue is evidence of his unprovoked anger. There is no "serious evidentiary dispute" as to the existence or lack of sudden heat in this case. *Wright,* 658 N.E.2d at 567. Accordingly, the trial court properly refused to instruct the jury on voluntary manslaughter.

### D. *Involuntary manslaughter*

 Involuntary manslaughter is not an inherently included lesser offense of mur-

der. *Id.* at 569; *compare* IND.CODE § 35–42–1–1 (1993) *with* IND.CODE § 35–42–1–4 (1993). It is a factually included lesser offense only if the charging instrument alleges that the killing was accomplished by a battery. *Wright,* 658 N.E.2d at 569–70. Battery is a knowing or intentional touching of another person in a rude, insolent, or angry manner. IND.CODE § 35–42–2–1 (1993 & Supp.1995). Although a shooting can in some situations be classified as a battery, *Lynch v. State,* 571 N.E.2d 537, 538–39 (Ind.1991), here the information alleged only that "Keith D. Champlain did knowingly kill another human being, to-wit: Sherri Reeves Vanlue[.]" Record at 17. Because the information did not assert a battery, involuntary manslaughter in this case was not a factually included lesser offense of murder. The trial court therefore did not err in refusing to give the instruction. *Wright,* 658 N.E.2d at 567.

### II. Sufficiency of the Evidence

 Finally, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment,[7] bars a retrial—even where the defendant requests it as here—if the reviewing court concludes that the evidence was legally insufficient to support the conviction. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (reversal by federal appeals court for evidentiary insufficiency was functional equivalent of judgment of acquittal that could not be waived); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (applying *Burks* to state criminal proceedings). Champlain asserts there was insufficient evidence to support his conviction for murder. In reviewing a sufficiency of the evidence claim, we do not reweigh evidence. or assess the credibility of witnesses. A conviction will be affirmed if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Wooden v. State,* 657 N.E.2d 109, 111 (Ind.1995). The jury could have concluded from the evidence that Champlain

---

**7.** *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

"knowingly" killed Sherri Vanlue. Indeed, his statement that Vanlue "lied to me, so I shot her" could be viewed as an admission of intentional or knowing murder. In any event, Jamison testified that Champlain fired into a trailer home at close range aware that Vanlue was inside. Vanlue's voice could have permitted Champlain to form a conclusion as to her location even if visibility was blocked by the door. Champlain's expressions of intent to kill both before and after the shooting, if also credited, bolster the jury's verdict. The intent to commit murder may be inferred from the nature of the attack and the circumstances surrounding the crime. *Pilarski v. State*, 635 N.E.2d 166, 169 (Ind.1994). Accordingly, the evidence was sufficient to support the conviction and the Double Jeopardy Clause does not bar a retrial for murder.

### Conclusion

We reverse the murder conviction of Keith D. Champlain and remand for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.