**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TORRENCE L. BELCHER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  71A03-1311-CR-461 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D03-1110-MR-10

**September 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Torrence Belcher ("Belcher") appeals his conviction for murder[1] and challenges the trial court's refusal to instruct the jury on the lesser-included offense of reckless homicide. Belcher argues that the trial court committed reversible error because there was a serious evidentiary dispute regarding his culpability in the death of Jeremy Miller ("Miller"). Concluding that no serious evidentiary dispute existed, we find that the trial court did not abuse its discretion in refusing to instruct the jury on reckless homicide.

We affirm.

## ISSUE

Whether the trial court abused its discretion in refusing to instruct the jury on reckless homicide.

## FACTS

On October 29, 2011, Antonio Pepper ("Pepper") made plans with Brandon Jones ("Jones") to go to some Halloween parties. Jones drove his car to pick up Pepper, and Belcher, who lived next door to Pepper, joined them. The trio began planning the evening while drinking vodka in the car. Belcher told Pepper and Jones that he had a handgun with him. Pepper and Jones told Belcher that they did not want anything to do with the handgun. Belcher told them that he respected their concerns, but he insisted on bringing the handgun. Later that evening, Miller joined the group.

As the evening progressed, Pepper became concerned about Jones's driving. The men stopped at a liquor store to buy more alcohol, and Jones agreed to let someone else

---

[1] IND. CODE § 35-42-1-1.

drive. Jones and Miller entered the store while Belcher and Pepper waited in the car. Jones and Miller returned to the car with more vodka, and the men began to drink again. The men then decided to go to the Blue Jeans bar in Mishawaka. At this time, Miller was driving, Jones was sitting in the front-passenger seat, Pepper was sitting behind Miller, and Belcher was sitting behind Jones. Belcher had a problem with the new seating arrangement because he had paid for gas and wanted to sit in the front. Jones, however, insisted on sitting in the front because he owned the car.

As the car approached the Blue Jeans bar, Pepper and Jones heard a gunshot. Pepper grabbed his ears and threw himself to the floor of the car. Jones looked over to Miller and saw that the driver's side window was shattered. Miller leaned forward and put the car in park. Jones opened the door and crawled out of the vehicle. Ten to twenty seconds after Pepper heard the first shot, he heard four or five more shots. Pepper waited ten to fifteen more seconds, looked up, and saw that Jones was on the ground crying. Miller was slumped over in the driver's seat and did not respond to Pepper calling his name. Pepper saw Belcher standing outside of the car holding his handgun. Belcher looked towards the front of the car a few times and ran away. Pepper called 911, and the officers came to the scene.

Officer Christopher Boling ("Officer Boling") approached Jones's car and saw Miller slumped over to the right. He checked for a pulse on Miller and found none. Pepper told Officer Boling the direction Belcher had ran, and the officer requested that other responding officers set up a perimeter. Shortly thereafter, the officers found Belcher still carrying his handgun, and arrested him.

3

On October 31, 2011, the State charged Belcher with murder. A jury trial began on October 4, 2013. At trial, Dr. Joseph Prahlow ("Dr. Prahlow") testified that Miller had suffered five gunshot wounds to his head and neck and a sixth wound to his upper back. Three of these wounds were from bullets that entered from the top of Miller's head through his brain and exited his chin or neck, causing lethal injuries. Dr. Prahlow observed extensive gunpowder residue around most of the entrance wounds, indicating that the gun was fired from close range.

The parties stipulated that Belcher's handgun was a Jimenez Arms 9mm Luger caliber semiautomatic pistol and that the eight recovered spent shell casings were 9mm caliber ammunition and fired from Belcher's handgun. Officer Alex Arendt ("Officer Arendt") testified that a semiautomatic pistol, such as Belcher's, required a pull of the trigger for each shot. On cross-examination, Pepper and Jones testified that there was no tension or hostility between anyone in the car. Belcher rested without presenting any evidence.

At the close of evidence, Belcher requested that the trial court instruct the jury on reckless homicide as a lesser-included offense of murder. The trial court acknowledged that reckless homicide is an included offense of murder but refused to give the instruction because, in its view, there was no serious evidentiary dispute regarding whether Belcher knowingly or recklessly killed Miller. The jury convicted Belcher, and the trial court sentenced him to fifty-five (55) years in the Department of Correction. Belcher now he appeals.

DECISION

Belcher argues that the trial court abused its discretion in refusing to give his proffered jury instruction for reckless homicide because there was a serious evidentiary dispute regarding his culpability.

When asked to instruct the jury on a lesser-included offense, trial courts are to apply the test set forth by our Indiana Supreme Court in *Wright v. State*, 658 N.E.2d 563 (Ind. 1995). "First the trial court must determine whether the lesser offense is either 'inherently' or 'factually' included in the crime charged." *Champlain v. State*, 681 N.E.2d 696, 699 (Ind. 1997) (citing *Wright*, 658 N.E.2d at 566-67). If an offense is either "inherently" or "factually" included in the crime charged, the trial court must then consider, based on the evidence presented by both parties, whether a serious evidentiary dispute exists. *Wright*, 658 N.E.2d at 567. Our Supreme Court further explained as follows:

> If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Id*. If a trial court makes a factual finding regarding the existence or lack of a "serious evidentiary dispute," we review that decision for an abuse of discretion. *Champlain*, 681 N.E.2d at 700. "If the trial court makes no ruling as to whether a serious evidentiary dispute exists, *Wright* implicitly requires the reviewing court to make this determination

5

de novo based on its review of the evidence." *Id*. (citing *Brown v. State*, 659 N.E.2d 652, 656-67 (Ind. Ct. App. 1995), *trans. denied*).

Belcher and the State agree that reckless homicide is an inherently included offense of murder. *See Davenport v. State*, 749 N.E.2d 1144, 1150 (Ind. 2001). In fact, the trial court heard arguments from Belcher and the State on whether a serious evidentiary dispute existed concerning Belcher's culpability. Specifically, the trial court stated:

> On the reckless homicide . . . where is the conscious disregard? Where's the dispute here about a conscious disregard? There is a gun where the trigger gets individually pulled. With one shot and a pause of four or five seconds and then more shots, one after the other. . . . I'm not going to give [the reckless homicide instruction.]

(Tr. 194). Because the trial court made a specific finding, we will review its denial of Belcher's proposed instruction for an abuse of discretion.

In reviewing the trial court's finding that a serious evidentiary dispute did not exist, we look to the culpability required to be convicted of each of the charged offenses. Reckless homicide occurs when one recklessly kills another, while murder occurs when one knowingly or intentionally kills another. *Compare* IND. CODE § 35-42-1-5 *with* IND. CODE § 35-42-2-1(1). Reckless conduct is action taken in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable conduct. IND. CODE § 35-41-2-2(c). A person knowingly engages in conduct if that person is aware of a high probability that he or she is doing so. IND. CODE § 35-41-2-2(b). A person engages in conduct intentionally when it is the conscious objective of the person to do so. IND. CODE § 35-41-2-2(a).

6

In this case, the evidence reveals that Belcher shot Miller six times in the head, neck, and back at close range. The gun was fired at a range close enough to Miller that gun powder residue and stippling were found on Miller's body.[2] Further, Pepper testified that he heard a gunshot followed by a ten to twenty second pause and then four or five more shots. Officer Arendt testified that the semiautomatic handgun used in Miller's killing required a separate pull of the trigger for each shot. This evidence strongly indicates that Belcher knowingly or intentionally shot Miller. Belcher directs our attention to Pepper and Jones's testimony that there was no animosity between anyone in the car. However, this evidence is more indicative of motive, which is not a relevant consideration in this case. There is simply no evidence in the record creating a serious dispute regarding Belcher's culpability. *Cf. Webb v. State*, 963 N.E.2d 1103, 1108 (Ind. 2012) (serious evidentiary dispute existed where defendant immediately expressed remorse and claimed an accident occurred where four people, including the defendant and victim, played with, loaded, unloaded, and shot a handgun in the air). Accordingly, we find no serious evidentiary dispute, and the trial court did not abuse its discretion in refusing to instruct the jury on the lesser-included offense of reckless homicide.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

[2] "The powder pattern of pistols, revolvers and rifles is a definite indication of the range at which the shot was fired, from a minimum of 'contact' to a maximum of three feet." 1 F. Lee Bailey & Henry Lee Rothblatt, Crimes of Violence: Homicide and Assault § 187 (1973).