ATTORNEY FOR APPELLANT
Phillip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana



FILED
Mar 23 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 71S05-1106-CR-329

BRICE WEBB,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the St. Joseph Superior Court, No. 71D03-0910-MR-00023
The Honorable Jerome Frese, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 71A05-1007-CR-517

**March 23, 2012**

**Rucker, Justice.**

Charged with murder in the shooting death of his girlfriend, Brice Webb requested a jury instruction on the lesser offense of reckless homicide. The trial court denied the request and Webb was convicted as charged. We granted transfer to address the propriety of the trial court's ruling.

**Facts and Procedural History**

Webb and his girlfriend, Cherlyn Reyes, shared an apartment. On October 8, 2009, Shane Hillebrand and Ashley Gurrister were visiting the apartment where the four ate dinner, watched movies, and drank alcohol. Gurrister brought a handgun with her that she had recently purchased. The friends posed for photos with the handgun and went outside to shoot the handgun in the air.

During the course of the evening, Reyes and Gurrister left the apartment to visit friends. While they were gone, Webb passed out on the couch while Hillebrand continued watching movies. When Reyes and Gurrister returned later that evening, Reyes began looking through Webb's cell phone call history. Reyes discovered Webb had been making calls to other women, became jealous and upset, and slapped Webb across the face. A verbal and physical fight between Reyes and Webb ensued. Hillebrand described the fight as "an all out rumble between the both of them. It was more physical than I've ever saw [sic] in my life between a male and a female." Tr. at 354. The fight lasted between forty-five minutes and an hour. At one point, Webb punched Reyes and briefly knocked her unconscious. Hillebrand and Gurrister repeatedly attempted to break up the fight. After the fighting had settled down, Reyes went into the bathroom to call the women she suspected Webb had been calling, and another fight ensued. That fight ended when Gurrister and Hillebrand intervened.

Shortly before midnight, Reyes again went into the bathroom to call her friend Jessica Hoover. Hillebrand testified that while Reyes was on the phone, Webb came into the living room and asked for a cigarette lighter. At that time, Hillebrand believed the "gun was still sitting on the table." Tr. at 356. Webb lit his cigarette and left the room. Hoover testified regarding her phone conversation with Reyes that she heard Webb come into the bathroom and he

2

"sounded a little irritated. . . . I could hear him loudly in the phone, and they were arguing." Tr. at 179. Then Reyes said "Brice, no," and went quiet. Tr. at 179. The next thing Hoover heard was Webb screaming, "Cherlyn, baby, wake up, wake up." Tr. at 179.

From the apartment's living room, Hillebrand and Gurrister heard a gunshot and both ran toward the bathroom and met Webb in the hallway. Hillebrand testified Webb said, "I just shot my baby's momma," Tr. at 357, while Gurrister testified that Webb "said he didn't mean to, that it was an accident." Tr. at 483. They found Reyes lying on the bathroom floor and "watched her take her last breath." Tr. at 483.

During the commotion that followed, Hillebrand took the gun from Webb, and Gurrister drove Webb to Hillebrand's house. While there Webb woke up Sasha Alexander. Alexander testified that "[Webb] just kept repeating he shot his baby momma." Tr. at 415-16. Still at the apartment, Hillebrand called 911 and went outside to wait for police.

Officers of the South Bend Police Department arrived at Hillebrand's home, arrested Webb and transported him to the homicide unit where a videotaped interview was conducted. During the interview, Webb stated he did not shoot Reyes, that he had left the apartment to buy cigarettes at a nearby gas station, and when he returned he found that Reyes had been shot and was lying on the bathroom floor.

The day after the shooting the State charged Webb with murder. And on March 5, 2010, the State filed an information alleging Webb to be an habitual offender – to which Webb objected. A jury trial began on May 17, 2010, at the close of which Webb requested a jury instruction on the lesser offense of reckless homicide. The trial court denied the request and the jury found Webb guilty as charged. The jury also found Webb to be an habitual offender. The trial court sentenced Webb to sixty-five years for murder enhanced by thirty years for the habitual offender adjudication.

Webb appealed raising the following restated issues: (1) Whether the trial court erred in allowing the State to file the habitual offender charge beyond the statutory period allowed for

amending charges; (2) Whether the trial court erred in admitting evidence of Webb's videotaped interview; and (3) Whether the trial court erred in refusing to instruct the jury on the lesser offense of reckless homicide. The Court of Appeals rejected each of these claims and affirmed the judgment of the trial court in an unpublished memorandum decision. See Webb v. State, 71A05-1007-CR-517 (Ind. Ct. App. April 12, 2011). Having previously granted transfer thereby vacating the opinion of the Court of Appeals, see Ind. Appellate Rule 58(A), we now reverse the judgment of the trial court with respect to Webb's jury instruction claim. We summarily affirm that portion of the Court of Appeals' opinion concerning Webb's remaining claims. Additional facts are set forth below where necessary.

## Discussion

In Wright v. State the Court developed a three-part test that trial courts should perform when called upon by a party to instruct on a lesser included offense to the crime charged. 658 N.E.2d 563 (Ind. 1995). First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. Id. at 566. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. Id. at 567. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. Id. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, "it must look at the evidence presented in the case by both parties" to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. Id. "[I]t is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense" if there is such an evidentiary dispute. Id.

Applying the foregoing framework, as to the first two prongs of the <u>Wright</u> test the only element distinguishing murder and reckless homicide is the defendant's state of mind: reckless homicide occurs when the defendant "recklessly" kills another human being, and murder occurs when the killing is done "knowingly" or "intentionally." <u>Compare</u> Ind. Code § 35-42-1-5, <u>with</u> I.C. § 35-42-1-1(1). Reckless conduct is action taken in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. § 35-41-2-2(c). By contrast, a person engages in conduct "knowingly" if the person is aware of a "high probability" that he or she is doing so. I.C. § 35-41-2-2(b).[1] Thus, reckless homicide is an inherently included lesser offense of murder. <u>See</u> <u>Davenport v. State</u>, 749 N.E.2d 1144, 1150 (Ind. 2001). The determinative issue here is whether the evidence produced a serious evidentiary dispute concerning Webb's state of mind that would justify giving the requested instruction.

The trial court refused Webb's request to give a reckless homicide lesser included jury instruction because Webb "denied the act [of murder], period. When he denies the act, he cannot then take advantage of the inherent lesser" included offense. Tr. at 680. The trial court was certainly correct that Webb himself declared not only was he not the shooter but also he was not even present when the shooting took place. But that does not end the analysis. <u>Wright</u> makes clear that in determining whether a serious evidentiary dispute exists the trial court "must look at the evidence presented in the case *by both parties*." <u>Wright</u>, 658 N.E.2d at 567 (emphasis added). The Court has been consistent in this regard. <u>See</u> <u>Fisher v. State</u>, 810 N.E.2d 674, 680 (Ind. 2004) ("[W]hen addressing the question of whether there is a serious evidentiary dispute, the court must evaluate the evidence presented by both parties."); <u>Young v. State</u>, 699 N.E.2d 252, 255 (Ind. 1998) ("[T]he trial judge must consider whether the evidence provided by both parties creates a serious evidentiary dispute about the element or elements which distinguish the greater from the lesser offense."); <u>Wilson v. State</u>, 697 N.E.2d 466, 473 (Ind. 1998) ("[T]he inquiry hinges on whether a serious evidentiary dispute exists as to which offense was committed by the defendant, given all the evidence presented by both parties."); <u>Champlain v. State</u>, 681

---

[1] We do not address whether Webb "intentionally" killed Reyes because the charging information alleged only that Webb "knowingly" did so. Appellant's App. at 5.

N.E.2d 696, 699 (Ind. 1997) ("[T]he question whether to give the instruction hinges on the evidence presented by both parties.").

To be sure, if we consider only the evidence presented by Webb, there would be no question that he would not be entitled to an instruction on a lesser included offense. But Wright and its progeny dictate that the evidence presented by the State must also be taken into account. This point is well illustrated in at least two cases. For example, in Young the defendant interposed an alibi – the classic "I didn't do it because I wasn't there" defense – and for that reason the trial court refused to give the defendant's tendered reckless homicide instruction. 699 N.E.2d at 256. Yet this Court unanimously held that because there was a serious evidentiary dispute, the defendant was entitled to have the jury instructed on the lesser included offense of reckless homicide. Reversing the trial court and remanding for new trial, the Court declared that "[p]resenting an alibi defense does not automatically bar instructions on a lesser included offense." Id. The Court noted that "[w]hether a defendant raises an affirmative defense bears only tangentially on the issue of whether there is a serious evidentiary dispute regarding the State's case in chief." Id. at 256 n.5.

Young relied on Champlain, where the trial court refused to give the defendant's tendered reckless homicide instruction because the defendant had argued that another person had committed the murder. In essence defendant's theory of the case was "to pin the murder" on someone else. Champlain, 681 N.E.2d at 700. On review this Court determined that the trial court's refusal was reversible error. We held that the trial court's statement that such a defense was inconsistent with defendant's alternative defense, which conceded defendant's involvement but attempted to show a lower level of mental culpability, was inadequate to explain that no serious evidentiary dispute existed regarding whether the defendant had committed murder or reckless homicide. Specifically the Court declared: "Assuming without deciding that it is within the trial court's discretion to refuse to instruct on affirmative defenses if they are inconsistent with the defense's contentions, the issue in this case is whether an instruction is required when there is a serious evidentiary dispute as to an element of the State's case in chief." Id. Young also discusses with approval a pre-Wright case, Shelby v. State, 281 N.E.2d 885 (Ind. 1972),

6

where a defendant charged with robbery presented an alibi defense but was convicted of theft, a lesser included offense of robbery. 699 N.E.2d at 256.

We observe that looking at the evidence presented in the case by both parties ensures that both the prosecution and the defense are entitled to a lesser included offense instruction if there is a serious evidentiary dispute justifying it. Although this rule is admittedly deployed far more often on a defendant's behalf, there are times when the State decides at the close of all the evidence that it wants the benefit of instructing the jury on a lesser included offense. There are times when a defendant objects to a lesser included offense instruction. Indeed, in <u>Wright</u> the defendant appealed the giving of instructions on the lesser offenses of murder. It is precisely because we intended the door to swing both ways that <u>Wright</u> makes such a strong point of saying that a serious evidentiary dispute requires the court to "look at the evidence presented in the case by both parties." 658 N.E.2d at 567.

In this case, the State's evidence concerning Webb's state of mind is at best ambiguous. As defense counsel pointed out at trial, there were "discrepancies of evidence that came through at various times from two other people who [were present at the scene] who say [Webb] had the gun, even how he got it, even when it got loaded or by whom it was loaded or unloaded, we think [that] raises a question as to whether or not when the gun was fired whether or not the person who fired it knew that it was in fact loaded." Tr. at 679. Defense counsel was referring to the testimony from Hillebrand and Gurrister. Hillebrand testified that Gurrister brought a gun to the apartment and all four present, Hillebrand, Gurrister, Reyes, and Webb, played with the gun. Tr. at 350. Each fired the gun into the air. Tr. at 351. Gurrister and Webb both unloaded the gun at different points in the evening. Tr. at 351-52. Hillebrand, Gurrister, and Webb had pictures taken posing with the gun, and Webb pointed the gun at both Gurrister and Reyes in a "playing but not playing way." Tr. at 352. Gurrister similarly testified that she brought a gun to the apartment and each of the four fired the gun. Tr. at 476-77. She testified that she posed with the gun and "took the clip out a lot of times." Tr. at 477. The four also passed the gun around "talking and just looking at it." Tr. at 477. Further, when Webb pointed the gun at Reyes, "the clip wasn't in it . . . at that time." Tr. at 477. Gurrister and Reyes left the apartment for approximately an hour and a half. Gurrister testified she "took the clip with me because I didn't

7

want [Hillebrand and Webb] shooting [the gun] off while I was gone. But I didn't want to ride with it because we had been drinking. So I left the gun there and I took the clip with me." Tr. at 478. After returning to the apartment, the gun was in Gurrister's purse, but she did not testify specifically if it had been reloaded. See Tr. at 484-85. Finally, Gurrister testified that after hearing the gunshot, she ran toward the bathroom and encountered Webb who said "he didn't mean to [shoot Reyes], that it was an accident." Tr. at 483. Hoover, who was on the phone with Reyes when she was shot, heard Webb say "Cherlyn, baby, wake up, wake up." Tr. at 179.

The evidence in this case is certainly sufficient to support the jury's guilty verdict of murder. However, the evidence also produced a serious evidentiary dispute concerning whether Webb acted knowingly or recklessly. And depending on how the jury might have weighed and credited all of this evidence, it very well could have returned with a conviction of reckless homicide. The trial court's refusal to instruct the jury on the lesser-included offense of reckless homicide was reversible error.

## Conclusion

We reverse Webb's conviction and remand this cause for a new trial.

Dickson and Sullivan, JJ., concur.
David, J., dissents with separate opinion in which Shepard, C.J., joins.

8

**David, J., dissenting.**

A jury convicted Webb of murdering Reyes after a trial court denied Webb's request for a jury instruction on the lesser included offense of reckless homicide. I agree with the trial court, and therefore respectfully dissent. As the trial court said,

> [h]e has denied the act, period. When he denies the act, he cannot then take advantage of the inherent lesser and say, well, even if they think I'm a liar and think I did it, I'm entitled to the lesser because for this argument the judge should assume that I was lying also and give me that but then give me the benefit of the lesser.

I agree with the majority that the issue here is the third prong of the <u>Wright</u> test, to "look at the evidence presented in the case by both parties" to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense, and thus, if a jury could conclude that the lesser offense was committed but not the greater. <u>Wright v. State</u>, 658 N.E.2d 563, 567 (Ind. 1995). However, I find the cases cited in the majority opinion to be distinguishable from the facts before us today.

In <u>Champlain v. State</u>, 681 N.E.2d 696 (Ind. 1997); <u>Wilson v. State</u>, 697 N.E.2d 466 (Ind. 1998); and <u>Young v. State</u>, 699 N.E.2d 252 (Ind. 1998), the defendant in each case did not testify. In <u>Fisher v. State</u>, which the majority opinion also cites today, the defendant testified that he did not intend to shoot the victim and was only "playing around" with the gun. 810 N.E.2d 674, 680 (Ind. 2004). Furthermore, Fisher testified after the gun discharged, he "started screaming, I'm sorry, I'm sorry" and called for an ambulance. <u>Id.</u> Similarly, had Webb testified to his mens rea at the time of the crime, he would have been entitled to the lesser included instruction.

I find the present case analogous to <u>Wilson</u>, in which the defendant proffered an insanity defense. 697 N.E.2d at 474. In concluding the trial court correctly refused Wilson's reckless homicide instruction, this Court said, "[b]ecause a successful insanity defense would make Wilson nonculpable for any offenses he may have committed, the insanity defense cannot be the mechanism to demonstrate dispute entitling him to a lesser included instruction." <u>Id.</u> at 475. The logic is analogous to our majority holding today, that had the jury believed Webb's

testimony, they could have found him not guilty, similar to if a jury had believed Wilson's insanity defense, he would have been not culpable for any offense he committed.

I believe to require the trial court to give the lesser included jury instruction when Webb claims under oath at trial that he was not present and therefore not the shooter would result in a farce upon the trial court. It would be giving Webb the opportunity to testify that he was not there and could not have committed the crime, but that if the jury believed he was there, then he didn't intend to kill her.

The defendant chose to testify. He did not have to and certainly if he had not, no adverse inference could have been drawn. In fact, had he not testified, he most certainly would have been entitled to the lesser included instruction. However, he chose to testify. That was his choice. His testimony was that he was not there. He should not be allowed to make a mockery out of the state's burden of proof and argue to a jury he was not there, but if he was, he didn't have the necessary intent. For these reasons, I respectfully dissent.

Shepard, C.J., joins.

2