**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAY A. RIGDON**
Rockhill  Pinnick, LLP
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| JAMES A. CARR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 25A04-1112-CR-650 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FULTON SUPERIOR COURT
The Honorable Wayne E. Steele, Judge
Cause No. 25D01-0611-MR-277

**August 9, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

James Carr appeals his conviction for murder. We affirm.

**Issues**

Carr raises two issues on appeal, which we restate as:

I.    whether the trial court erred by denying his motion for change of judge; and

II.    whether the trial court erred by denying his request for a reckless homicide instruction.

**Facts**

On November 4, 2006, Carr entered the Denton Corner Tavern in Monterey, Indiana. The bartender, Jan French, was informed by a customer that Carr had blood on his pants. French spoke with Carr, and Carr said that he needed to go home. French did not believe that Carr could safely drive because he was intoxicated. French offered to drive him home and arranged to have Darlene Denton, the tavern owner, follow them in a separate vehicle.

During the drive, Carr informed French that "he was going to jail." Tr. p. 381. She assured him that he need not worry because she was driving. He then told her that he had shot Roy Shaffer. He said that Shaffer "wouldn't tell me the truth, so I pulled the trigger." Id. at 382. Carr was allowing Shaffer to stay at Carr's mother's vacant house and was providing support until Shaffer could become self-sufficient. Carr and Shaffer had spent the night drinking at Shaffer's home. According to Carr, an argument began between the two men, which resulted in the shooting.

After French delivered Carr to his home, she relayed to Denton what Carr had told her. French and Denton returned to the tavern and called the sheriff's department to report the incident. Both women drove to the house in order to provide the sheriff's department with more information. When they arrived at Shaffer's house, the women found Shaffer lying in a wheelbarrow with his legs draped over the side. French was on the phone with the sheriff's department when they discovered Shaffer's body.

Deputy Terry Engstrand of the Fulton County Sheriff's Department responded to the dispatch. Deputy Engstrand found Shaffer in the wheelbarrow, and it was apparent that he had been shot in the face and had a wound on his right cheek. Detective Daniel Pryor arrived a short time later. When Detective Pryor questioned Denton and French, the women confirmed that Carr had admitted to killing Shaffer. Officers searched Carr's house, and he was taken into custody. During the search, Carr said, "I haven't told anyone. Oh wait, I did tell someone." Id. at 471.

On November 8, 2006, Carr was charged with murder. A jury trial was conducted in April 2009, and Carr was found guilty of murder. On June 16, 2009, Carr was sentenced to fifty-five years imprisonment. Carr appealed this conviction and raised the issue of an erroneous police interview conducted in disregard of his right to counsel. In a memorandum decision, we affirmed Carr's conviction. The supreme court, however, granted Carr's petition to transfer, and on September 29, 2010, the supreme court reversed our determination and remanded the case for a new trial.

3

On March 1, 2011, Carr requested a change of venue and moved for a change of judge. On April 8, 2011, the trial court found that Carr's motion for change of venue was premature and denied his motion for change of judge. On September 6, 2011, Carr filed a petition for writ of mandamus in our supreme court requesting the trial court be ordered to grant his motion for change of judge. The supreme court denied Carr's petition stating that it was not timely filed and that it failed to demonstrate any bias. See Appellant App. p. 467.

A second jury trial was conducted in October 2011. At the trial, the State presented evidence from forensic pathologist Dr. Joseph Prahlow who performed the autopsy on Shaffer. Dr. Prahlow concluded that Shaffer suffered a stellate shotgun wound to the face. Shaffer's wound also showed signs of soot on the outside of and deep within the wound. Through his study of the wound, which included an examination of the soot and the charring of the wound, he could not determine if the wound was inflicted from a distance or in contact with Shaffer's face. He did state that it was unlikely to find deep charring in a distant wound and that Shaffer's wound had signs that were more characteristic of a contact wound.

Carr's counsel presented two hypothetical scenarios to Dr. Prahlow during cross-examination. First, counsel asked whether the wound was consistent with a scenario in which a person is holding a shotgun, stumbles, reaches across a table, and discharges a gun. Dr. Prahlow agreed that this is a possible scenario in which the wound could have occurred. Second, Carr's counsel asked if the wound was consistent with a scenario in

4

which one person is holding the shotgun and the victim shoves the person who falls to the floor and pulls the trigger as a result of the fall. Again, Dr. Prahlow agreed. Beyond the presentation of these hypothetical scenarios, Carr provided no evidence to prove the hypothetical scenarios.

At trial, Carr tendered a jury instruction on the lesser included offense of reckless homicide. Carr asserted that there was a serious evidentiary dispute as to Carr's state of mind at the time of the shooting, which was evidenced by Dr. Prahlow's positive responses to his hypothetical scenarios. The trial court denied this request, finding no serious evidentiary dispute, and instructed the jury only on the charge of murder. The jury found Carr guilty of murder, and he was sentenced to fifty-five years. He now appeals.

**Analysis**

*I. Motion for Change of Judge*

Carr contends that the trial court erred by not granting his motion for change of judge. Either party may move for a change of judge when a conviction is reversed on appeal and a new trial ordered. See Ind. Code § 34-35-4-2(b). "The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Ind. Crim. Rule 12(b). The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. See Sturgeon v. State, 719 N.E.2d 1173, 1181 (Ind. 1999). The law presumes that a judge is unbiased and unprejudiced. See Lasley v. State, 510 N.E.2d 1340, 1341 (1987). A motion for change of judge is neither

automatic nor discretionary. Sturgeon, 719 N.E.2d at 1181. "A showing of prejudice that calls for a change of judge must be established from personal, individual attacks on a defendant's character, or otherwise. A defendant cannot merely claim prejudice on the grounds that the judge has ruled against him in a prior proceeding." Garland v. State, 788 N.E.2d 425, 433 (Ind. 2003). Carr has not alleged any specific bias and asks that we reconsider the decision in Garland.

We have no authority to set aside supreme court decisions and are bound by the precedents set by that court. See Culbertson v. State, 929 N.E.2d 900, 906 (Ind. Ct. App. 2010) (citing Horn v. Hendrickson, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005)). We decline to question this well-settled precedent. As Carr presents no evidence to suggest any personal prejudice on the part of the trial court judge, we do not address that aspect of the analysis. Carr has not demonstrated that the trial court erred when it denied his motion for change of judge.

## II. Reckless Homicide Instruction

Carr argues that the trial court erred by denying his request for an instruction on the lesser included offense of reckless homicide. In Wright v. State, 658 N.E.2d 563, 566-567 (Ind. 1995), our supreme court clarified the circumstances under which the trial court should instruct a jury on a lesser included offense and set forth a three-part test. First, the trial court should determine whether the lesser offense is inherently included in the charged offense. Id. at 566. Second, if the offense is not inherently included, then the trial court should determine if it is factually included in the charged offense. Id. at 567.

6

Finally, if the offense is either inherently or factually included in the charged offense, the court should examine the evidence and determine whether there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. Id. "It is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." Id.

When applying the foregoing framework to Carr's request, the only element distinguishing murder and reckless homicide is the defendant's mens rea. Reckless homicide occurs when one recklessly kills another, and murder occurs when one knowingly or intentionally kills another. Compare I.C. § 35-42-1-5, with I.C. § 35-42-1-1(1). Reckless conduct is action taken in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. § 35-41-2-2(c). A person knowingly engages in conduct if that person is aware of a high probability that he or she is doing so. I.C. § 35-41-2-2(b). Reckless homicide is an inherently included lesser offense of murder. See Davenport v. State, 749 N.E.2d 1144, 1150 (Ind. 2001). The determinative issue then becomes whether the evidence produced an issue of serious evidentiary dispute, particularly in determining Carr's state of mind at the time of the shooting.

In defining the existence of a serious evidentiary dispute, the trial court "must look at the evidence presented in the case by both parties." Wright, 658 N.E.2d at 567. The trial court reviewed Carr's arguments concerning the events leading up to the shooting and determined that "all the other evidence points otherwise." Tr. p. 716. The trial court

7

determined that the shooting was at close range and that Carr was well aware of the high probability of Shaffer's death. The trial court reviewed the evidence of both parties and determined that there was not a serious evidentiary dispute as to Carr's knowing and intentional state of mind at the time of the shooting. We agree.

Carr presented a series of hypothetical scenarios to Dr. Prahlow. Dr. Prahlow agreed that the scenarios were possible but was unable to state with any certainty that the scenarios occurred. Carr perhaps proved that there may be some question as to whether the wound was distant or contact, but this proof would have no effect on the determination of Carr's state of mind at the time of the shooting. In fact Carr's statements to French directly contradict his counsel's hypothetical scenarios. Carr said that Shaffer "wouldn't tell me the truth, so I pulled the trigger." Id. at 382. This is clear evidence that he intended to fire the shotgun at Shaffer. Also, it is evident that the shotgun was pointed at Shaffer's face the moment Carr pulled the trigger. Carr made no mention to anyone at Denton's Tavern or to French that there was any argument between him and Shaffer or that the shooting was accidental. His actions and statements directly contradict the hypothetical scenarios proposed to Dr. Prahlow.

Carr also mentions Webb v. State, 963 N.E.2d 1103 (Ind. 2012), to assert that the trial court must look to the evidence presented by both parties to determine if there is a serious evidentiary dispute. In Webb, the supreme court reversed the trial court and held that Webb should have received the reckless homicide instruction. The circumstances in Webb diverge greatly from this case, and the two cases are clearly distinguishable.

8

In Webb, four people were present in a house drinking throughout the evening. Webb and his girlfriend had been fighting, and at one point, his girlfriend retreated to the bathroom to call a friend. When Webb confronted his girlfriend in the bathroom, he shot her. The friend on the phone testified that she could hear Webb's voice over the phone saying, "Cherlyn, baby, wake up, wake up." Webb, 963 N.E.2d at 1105. Upon hearing the shot, the other two occupants of the house ran to the bathroom and met Webb outside in the hallway. Webb told one of the other occupants, "I just shot my baby's momma." Id. The other witness testified that Webb accidentally shot his girlfriend. Id.

Webb requested a reckless homicide instruction based on the evidence presented by other witnesses. This evidence is clearly more substantial than the two hypothetical scenarios put forth by Carr's counsel. The testimony in Webb concerned what actually happened; whereas, the hypotheticals proposed to Dr. Prahlow at trial did not coincide with evidence of Carr's actions or statements the night of the shooting. Carr presented no actual evidence or witness testimony suggesting he did anything other than knowingly or intentionally shoot Shaffer in the face.

Carr presented the hypothetical scenarios as proof of an evidentiary dispute, but he presented no evidence beyond these arguments to substantiate his claim of a reckless shooting. "It is axiomatic that the arguments of counsel are not evidence." Wilkerson v. State, 728 N.E.2d 239, 244 (Ind. Ct. App. 2000) (citing Blunt-Keene v. State, 708 N.E.2d 17, 19 (Ind. Ct. App. 1999)). There was no serious evidentiary dispute that would

9

support Carr's request for a reckless homicide instruction. The trial court properly denied Shaffer's request.

## Conclusion

We conclude that the trial court properly denied Carr's motion for change of judge and properly denied Carr's request for a reckless homicide jury instruction. We affirm.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.