## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2020, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffery R. Buckley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | April 20, 2020 <br><br> Court of Appeals Case No. 19A-CR-1028 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant W. Hawkins, Judge <br><br> Trial Court Cause No. 49G05-1710-MR-40142 |

**Altice, Judge.**

# Case Summary

Following a jury trial, Jeffery Buckley was convicted of murder and sentenced to sixty years in the Department of Correction (the DOC). On appeal, Buckley presents two issues for our review, one of which we find dispositive: Did the trial court abuse its discretion in refusing to give Buckley's proposed jury instruction on reckless homicide as a lesser included offense?

We reverse and remand.

# Facts & Procedural History

On September 30, 2017, Kirk Shurill attended the funeral, burial, and repass dinner for a friend. As people were leaving the repass dinner, Shurill was in the parking lot, behind the wheel of a friend's car, when he began "[s]pinning the tires" and "[b]urning rubber," which created a significant amount of smoke. *Transcript Vol. 2* at 149, 94. At the time, there were several hundred people, including elders and children, in the parking lot.

Buckley, who was among those leaving the repass dinner, approached the vehicle, leaned in through the passenger-side window, and told Shurill to "stop burning the rubber." *Id.* at 150. Shurill and Buckley, who did not know each other, exchanged words, and then Shurill suddenly let off the brake, causing the car to start moving forward while Buckley was still leaning through the window. As the car moved through the parking lot, shots were fired inside the car. Buckley fell from the car's window just before it collided with another car

in the parking lot. In the span of a few seconds, between eight and twelve shots were fired inside the vehicle.

[5] Unknown persons began firing shots at Buckley, who fled from the scene while returning fire. Shurill was transported to the hospital where he was pronounced dead. An autopsy revealed that Shurill sustained "24 clinical wounds"[1] to his right side, chest, right shoulder, abdomen, right thigh, right hip, and left thigh. *Id.* at 186. There was stippling on the right side of Shurill's neck, indicating that one shot was fired from an "intermediate range." *Id*. at 190. The shirt Buckley was wearing at the time of the shooting was found in a wooded area near the scene of the shooting. Buckley's shirt had no holes or defects but had a few small blood stains that were matched to Buckley.

[6] The State charged Buckley with murder. A jury trial was held February 11-13, 2019. At trial, Buckley argued that he acted in self-defense. Buckley testified and explained the circumstances from his perspective. As he was leaving the repass dinner, he saw that someone was "burning rubber" in the parking lot. *Transcript Vol.* 4 at 47. He assessed the situation, noting that there were a lot of people, including some of his immediate relatives, children, and elders, in the area. Buckley approached the car, leaned through the passenger window, and asked Shurill to stop, expressing concern that someone could be hurt. As Shurill laughed and looked to his left, Buckley stood up from the window and

---

[1] This includes both entrance and exit wounds and graze wounds.

saw a group of men near the edge of the parking lot. According to Buckley, he then leaned into the car a second time and found himself "face-to-face" with a gun. *Id*. at 49. Buckley testified that he leaned farther into the vehicle and, using both of his hands, tried to get control of the gun. Buckley described what happened next:

> [Shurill] fired off, I think, probably three to four shots. At that point, I positioned the gun, moved the gun down and as I moved the gun down, a bullet grazed me from my arm and my side. And at that point, I – his hand was pointing the gun like this (gesturing). I shifted it this way and I was pulling the gun back and he's leaning toward me. I fired a shot. And then he started to straighten up like and he hits the gas. I fire another shot. When he hits the gas, I'm trying to get out of the car. I'm losing my  -- my – my footing 'cause my feet were still on the – the ground. And as he took off, I remember the part of the window hitting me and making me fall more into the vehicle. And as I fell more into the vehicle, I started firing more shots.
>
> ***
>
> And then the vehicle, it seems as though it propelled. It became faster. I – I – I feared for my life and I fired more shots trying to stop him from running me into the vehicle and in front of him or the vehicle on the side. I felt at that point that this guy was gonna try to kill me. And I fired more shots trying [to] stop the threat, and it didn't work. I tried to get myself out of the vehicle. And finally I was able to get myself off of the vehicle.

*Id*. at 50-51. Buckley testified that he did not pay attention to where he was firing, only that he continued to fire the gun to try to get out of the situation.

[7]     At the close of evidence, Buckley requested that the jury be instructed regarding reckless homicide and submitted the following proposed instruction:

> You are hereby instructed that the crime of reckless homicide is a lesser included offense of the crime of murder.
>
> If you find the defendant Jeffery Buckley not guilty of murder, you may then consider whether Jeffery Buckley is guilty of reckless homicide.
>
> The crime of reckless homicide is defined as follows:
>
> A person who recklessly kills another human being, commits reckless homicide, a Level 5 felony. A person engages in conduct recklessly when he engages in such conduct in plain, conscious, and unjustifiable disregard of the harm that might result, and that such disregard involved a substantial deviation from acceptable standards of conduct.
>
> To convict the defendant, Jeffery Buckley, of reckless homicide, a Level 5 felony the State must prove each of the following elements:
>
> The defendant, Jeffery Buckley:
>
> 1. Recklessly,
>
> 2. Killed,
>
> 3. A human being, to wit: Kirk Shurill,
>
> 4. And did not act in self-defense.
>
> If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty of reckless homicide, a Level 5 felony.

If the State does prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of reckless homicide, a Level 5 felony.

*Appellant's Appendix Vol. 2* at 178.

[8] A discussion regarding the merits of Buckley's proposed instruction was held off the record in chambers. Thereafter, the trial court stated on the record that it was refusing Buckley's proposed instruction because "I don't think it's [a] correct statement of the law." *Transcript Vol. 4* at 88. Buckley's attorney objected to the court's ruling and made the following record:

> And from discussions in chambers, I wanna state for the record, it would appear not only will the Court not give the one I submitted, which may have some defects to it, but will not give any instruction even one the Court might possibly use in a different case for reckless homicide because the Court did not feel that that was justified based on the evidence here. We take exception of that and wants [sic] the record to note that we think the Court should give the lesser of reckless homicide based on the fact that there is – was evidence submitted by the defendant during his testimony that he may have acted recklessly in several different ways by grabbing the gun versus grabbing the gearshift to stop the progress of the Oldsmobile vehicle, by continuing to shoot in the fashion he did in order to protect himself and – and continuing to – or acting as he did in order to protect other persons. And also, by acting to protect himself in the commission of a forcible felony. He may have acted recklessly in that fashion and we feel that's an instruction that the jury deserves to hear.

*Id*. at 88-89. The State stated its position, asserting that the reckless homicide instruction was not warranted because "[i]t's a straight self-defense case." *Id*. at 89.

[9] After the case was submitted to the jury, the jury requested a definition and example of "unlawful entry into a car." *Transcript Vol. 4* at 117; *Appellant's Appendix Vol. II* at 190. The trial court felt obliged to answer the jury's question, but because the parties could not agree on a response, the trial court instructed the jury that the question could not be answered. The jury found Buckley guilty of murder. At an April 4, 2019 sentencing hearing, the trial court sentenced Buckley to sixty years in the DOC. Buckley now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[10] Buckley argues that the trial court erred in refusing to instruct the jury on reckless homicide as a lesser-included offense of murder.[2] When determining whether to instruct a jury on a lesser included offense, the trial court must perform a three-step analysis: (1) compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the latter is inherently included in the former; if not, (2) determine if the alleged lesser included offense is factually included in the crime charged

---

[2] Buckley also argues on appeal that the trial court erred by not responding to the jury's question. Given our resolution of the jury instruction matter, we need not address this issue.

by comparing the statute defining the alleged lesser included offense to the charging instrument in the case; and, if either, (3) determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995). In deciding if there is a serious evidentiary dispute, the court must look at the evidence presented in the case by both parties. *Id*. at 567. If the third step is reached and answered in the affirmative, the trial court will be found to have committed reversible error by not giving the requested instruction. *Id*. Our Supreme Court has cautioned: "when the question to instruct on a lesser included offense is a close one, it is prudent for the trial court to give the instruction and avoid the risk of the expense and delay involved in a retrial." *Champlain v. State*, 681 N.E.2d 696, 701 (Ind. 1997).

[11] When the trial court has made a finding on the existence or lack of a serious evidentiary dispute, our standard of review is abuse of discretion. *Miller v. State*, 720 N.E.3d 696, 702 (Ind. 1999) (citing *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998). Where there is no such finding, the reviewing court makes the required determination de novo based on its own review of the evidence. *Id*. Here, although the trial court made no determination on the record as to the existence or lack of a serious evidentiary dispute, Buckley's counsel noted on the record that discussions off the record concerned whether there was a serious evidentiary dispute, and then counsel proceeded to outline the evidence from which a jury might conclude that Buckley acted recklessly. We will therefore

review the trial court's decision for an abuse of discretion. *See Brown*, 703 N.E.2d at 1020.

[12] The only distinguishing feature in the elements of murder and reckless homicide is the *mens rea* required for each offense. *Compare* Ind. Code § 35-42-1-1 (murder is the knowing or intentional killing of a human being) and I.C. § 35-42-1-5 (reckless homicide is the reckless killing of a human being). Reckless homicide is therefore an inherently lesser included offense of murder. *McDowell v. State*, 102 N.E.3d 924, 931 (Ind. Ct. App. 2018) (citing *Evans v. State*, 727 N.E.2d 1072, 1082 (Ind. 2000)), *trans. denied*. A defendant commits a knowing killing when he is aware of a high probability that his actions will result in the death of a human being. Ind. Code § 35-41-2-2(b). A defendant commits a reckless killing when he acts "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct. I.C. § 35-41-2-2(c). A defendant charged with murder is entitled to an instruction on reckless homicide if there is a serious evidentiary dispute regarding the defendant's *mens rea*. *See Wright*, 658 N.E.2d at 567.

[13] Buckley argues that there is a serious evidentiary dispute regarding his *mens rea*. He points to his testimony that after Shurill fired several shots during the struggle over the gun, Buckley gained control and started firing. He testified that he did not aim at anything in particular, but rather, kept firing the gun trying to get himself out of the situation. In response, the State argues that

there is no serious evidentiary dispute because the number of shots fired and the number of wounds Shurill received establishes a knowing killing.

[14] Having reviewed the record, we agree with Buckley. In *Webb v. State*, 963 N.E.2d 1103 (Ind. 2012), our Supreme Court reversed Webb's murder conviction, determining that the trial court erroneously rejected his proposed jury instruction on reckless homicide as a lesser included offense. Webb shot his victim during an argument in a bathroom. Webb's defense was that he was not present at the time of the shooting. *Id*. at 1106-07. The Court noted that Webb's evidence by itself did not warrant giving a lesser included offense instruction. The Court, however, reiterated that whether a lesser included offense instruction should be given is based on the evidence presented by both parties. The Court looked to the State's evidence and noted that based on discrepancies in the evidence, it was unclear whether Webb knew the gun had a round in it when he shot his victim. The Court also noted testimony from a State's witness who heard Webb say immediately after the shooting occurred that "he didn't mean to [shoot Reyes], that it was an accident." *Id*. at 1108 (quoting the trial transcript). From this, the Court found that "the State's evidence concerning Webb's state of mind is at best ambiguous." *Id*. Although acknowledging that there was evidence to support the jury's guilty verdict of murder, the Court determined that there was also evidence that created a serious evidentiary dispute as to whether Webb acted knowingly or recklessly. *Id*.

In *Brown v. State*, 659 N.E.2d 652 (Ind. Ct. App. 1995), *trans. denied*, this court reversed a voluntary manslaughter conviction upon finding that the trial court abused its discretion in refusing to give Brown's proposed jury instructions on reckless homicide and involuntary manslaughter. The *Brown* court noted that shortly after an argument and a fight, the victim was shot just below her left eye. Immediately thereafter, Brown ran into the victim's mother's home screaming he had shot the victim. The *Brown* court held that "[t]his evidence does not preclude any reasonable possibility that Brown's conduct involved unjustifiable disregard of possible harm," and therefore, a reckless homicide instruction was warranted. *Id*. at 656. *See also Young v. State*, 699 N.E.2d 252 (Ind. 1998) (finding that there was a serious evidentiary dispute regarding whether defendant committed murder or reckless homicide when evidence suggested defendant shot into a crowd of people and did not specifically aim at victim); *Cf. Miller v. State*, 720 N.E.2d 696, 703 (Ind. 1999) (concluding that no serious evidentiary dispute existed where defendant fired ten shots because there was a high probability that firing a gun repeatedly while advancing toward victim sitting in a car would result in death); *Johnson v. State*, 986 N.E.2d 852 (Ind. Ct. App. 2013) (concluding there was no serious evidentiary dispute as to defendant's state of mind where defendant and victim went outside and moments later defendant shot victim a total of eleven times, two times at close range).

[16] In this case, although Buckley fired the gun and hit Shurill multiple times, we find that the evidence could have supported a finding that Buckley acted

recklessly in doing so. Buckley confronted an individual whom he believed was acting recklessly by "burning rubber" in a parking lot where a lot of people were gathered. *Transcript Vol. 4* at 47. According to Buckley, the situation escalated when Shurill pointed a gun at him and Buckley reacted by leaning into the car and reaching for Shurill's hand to protect himself. In a matter of seconds, Buckley found himself struggling for the gun and while hanging halfway inside the car and being dragged across the parking lot. In these few seconds, Buckley claims he was fired at and that he ultimately managed to gain control of the gun and fired multiple times in Shurill's direction. He testified that he did not aim at anything specific and that he kept firing the gun to try to get out of the situation. Witness accounts of what transpired were, in relevant part, consistent with Buckley's testimony. Several witnesses described how, in a short time frame, Buckley approached the car, leaned in, and was then dragged across the parking lot as half of his body was outside the car all the while shots were being fired. Buckley and Shurill did not know each other. There was conflicting evidence as to the ownership of the gun. While Shurill was shot numerous times, his wounds were to his side, arm, and legs. The shooting occurred during a very intense and volatile situation and there was no evidence of premeditation or deliberation.

[17]   We conclude that there is a serious evidentiary dispute as to Buckley's *mens rea*. From the evidence, the jury could have concluded that Buckley acted "in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involve[d] a substantial deviation from acceptable standards of

conduct" when, after he gained control of gun and while leaning through the window of a moving car, he fired the gun, hitting Shurill numerous times. *See* I.C. § 35-41-2-2(c). The trial court abused its discretion in refusing to instruct the jury on reckless homicide. We therefore reverse Buckley's murder conviction and remand for a new trial.

[18] Judgment reversed and remanded.

Robb, J. and Tavitas, J., concur.