## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2020, 11:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Adam G. Forrest
BBFCS Attorneys
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric J. Lairson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 31, 2020

Court of Appeals Case No.
20A-CR-28

Appeal from the
Wayne Superior Court

The Honorable
Charles K. Todd, Jr., Judge

Trial Court Cause No.
89D01-1804-MR-1

**Vaidik, Judge.**

# Case Summary

[1] Eric J. Lairson was convicted of murder for beating his girlfriend to death and sentenced to sixty years in prison. He now appeals, arguing that the trial court erred in refusing to instruct the jury on reckless homicide and that his sentence is inappropriate. We affirm.

# Facts and Procedural History

[2] Around 2:00 p.m. on December 13, 2017, Lairson called 911 to report he had just woken up and found his girlfriend of one year, Tylissa Isaacs, lying in a bathtub with no water and not breathing. Lairson told the 911 operator he and Tylissa "drank too much last night" and that she might have "alcohol poisoning." Tr. Vol. II pp. 215, 217. Lairson also said the two had argued and he had gotten mad and "hit the walls." *Id.* at 214. The 911 operator asked Lairson if Tylissa was breathing, and he said no. The 911 operator then asked Lairson if he could attempt CPR on Tylissa, but he said no because she had been there "too long" and her body was "cold." *Id.* at 214, 218. Lairson said when he went to bed, Tylissa "went to take a shower" and he thought she was coming to bed right after that. *Id.* at 216. Lairson added that at some point the night before, he "fell forward, hit the wall and cut [his] hand"; however, he "sw[ore] [he] didn't do anything like that" and Tylissa was "still alive when [he] went to sleep." *Id.* Lairson said he and Tylissa had an "altercation" "two or three, maybe four days ago" where he slapped her but that "nothing got physical" the night before. *Id.* at 218.

[3] Richmond Police Department Officer Paul Phillips arrived on the scene around 2:15 p.m. and found Tylissa's naked body in the bathtub with bruises "from her feet to her upper body, even to her neck." *Id.* at 220; Ex. 4. He also saw a "tuft of hair hanging on the corner of the bathroom sink." Tr. Vol. II p. 220. Lairson had a bandage on his left hand, and his blood had dripped throughout the house. Lairson told Officer Phillips that "he hadn't hurt [Tylissa], that he hadn't killed her, that they had been arguing and drinking the night before, [and] that there had been some minor physical altercation." *Id.* at 221-22. Lairson "kept repeating over and over that [the police] needed to fix this" because "he had done nothing." *Id.* at 222.

[4] A detective interviewed Lairson later that day and photographed fresh injuries to his left (dominant) hand. Exs. 28-32, 34. Lairson told the detective Tylissa had "too much" to drink the night before and they had argued. Tr. Vol. III p. 80. He explained:

> Sometimes you gotta put a woman in their place but do it legal. If you can't hold her down or whatever and she can't slap you and you slap her, (indiscernible) but we hadn't been fighting like that. I mean last week, you know, we got into something and I slapped her. That's the reason why her eye was black . . . .

*Id.* at 82. Lairson clarified that the earlier incident occurred "four or five days ago" and that during that incident, he "grabbed" and "mugged" Tylissa, which meant that he "push[ed] her up off me." *Id.* at 99, 128, 135.

When the detective again asked Lairson what happened the night before, Lairson said he and Tylissa "had words" but it didn't get "physical." *Id.* at 104. He added that they both "mugged" or pushed each other before she hopped in the shower, and he insisted that the injuries to his hand were not related to any violence toward Tylissa. Rather, he claimed they were due to an old injury, from "back in the day" when he boxed, and because he punched a door or wall the night before. *Id.* at 105. As Lairson explained to the detective:

> [When I get angry] I'll hit a door, I'll hit a wall, I ain't gonna hit my girl like that. I ain't goin' to knock my girl's teeth out or bust her upside the head. You know what I mean? I don't – I don't rock like that.

*Id.* at 106.

Later during the interview, Lairson said he "may have slapped" Tylissa but that he "never punched her." *Id.* at 126. Lairson then told the detective he would be "completely one hundred percent honest" and told the following story:

> I got drunk and fell. We had words, we pushed and shoved each other last night, but that's as bad as it got and then when I had my words, I said listen, what the fu** did you do? Why did you tear the shower curtain down and why the fu** is all this all over the place. . . . And she was mumbling and still moving around the shower, drunk. I said I ain't dealin' with this sh** and I walked the fu** out of the bathroom, went and laid down and I went to sleep, I woke up and my girl is dead. That's what I'm telling you.

*Id.* at 127. When the detective told Lairson they needed to figure out what happened to Tylissa, Lairson speculated that she "fell in the shower" or "drank too much." *Id.*

[7] The detective then asked Lairson about a scream heard around 2:00 a.m., and Lairson responded that they "yell at each other from time to time" because:

> We just an average young couple, we - we mug each other and slap each other. She - she may punch me a couple times, but I'm a man, I take that on the chin, but I slapped her, you know, that's the reason why her eyes black, I slapped her four or five days ago.

*Id.* at 131. However, he claimed that Tylissa did not scream around 2:00 a.m. *Id.* at 131-32. The detective continued asking Lairson what happened the night before, but Lairson kept repeating he only "slapped" Tylissa and didn't punch her. *Id.* at 136. He characterized what happened between them as "small stuff" and said they weren't "for real" fighting. *Id.* at 139, 142. He said he "had a wonderful time with [his] woman" and they were "drunk," "having fun," and "partying." *Id.* at 155. He again speculated that Tylissa was "too drunk and fell," had alcohol poisoning, or had "cancer." *Id.* at 144, 148. He emphasized that he didn't push Tylissa down in the shower, that Tylissa was alive when he last saw her in the shower, and that "[w]hat happened from there, [he didn't] know." *Id.* at 160, 162. The interview ended shortly thereafter.

[8] An autopsy occurred the next day. According to the forensic pathologist, Tylissa died from multiple blunt-force injuries to her head, neck, torso, and

extremities. The forensic pathologist found that two of the injuries were "more significant" than the others:

> The locations that were deemed I think the most serious was the head trauma, the bleeding that was present over the surface of her brain and then there were various associated contusions or bruises on her scalp. The other location was in the abdominal cavity. There was a laceration or a tear of the mesentery, which is the fatty tissue, which is present connecting the intestines and there's various blood vessels that run through this mesentery and there was a - a tear in there which subsequently caused a hemorrhage, which was identified within her abdominal cavity.

*Id.* at 228. The pathologist believed that "a significant amount of force" caused the injuries:

> [T]he force in order to cause a tearing of the mesentery of the abdominal compartment and tearing of the serosal surface of the intestine, bruising the diaphragm, . . . that would take a significant amount of force to the abdomen in order to cause those injuries. And clearly with the head, again, there's multiple contusions on the scalp and on the left side of the neck and on the face and on the right eye and then coupled with the subdural and subarachnoid hemorrhage of the brain, clearly it's going to take . . . a significant amount of force.

*Id.* at 240. The forensic pathologist believed that the injuries to Tylissa's abdominal area occurred "relatively close to the time of her death," not days before, and that the nature of her injuries was "inconsistent" with a single fall. *Id.* at 239, 248.

[9]     The State charged Lairson with murder.[1] At trial, a neighbor who lived next door to Lairson and Tylissa testified that as she was leaving home around 2:00 a.m. to pick up her fiancé from work, she heard "the worst horror scream ever in [her] life" coming from their house. *Id.* at 206. The scream, which came from a female, lasted about twenty seconds and was followed by "dead silen[ce]." *Id.* When the neighbor returned home shortly thereafter, she went to sleep but was woken up around 4:30 a.m. by a "big loud thud" that sounded like a "50 pound sack of potatoes being thrown around." *Id.* at 207. In addition, Lairson's 911 call and interview with the detective were played for the jury.

[10]    After the close of the evidence, Lairson requested a jury instruction on reckless homicide as a lesser-included offense of murder. Tr. Vol. IV pp. 88-90. The parties argued about whether a serious evidentiary dispute existed as to whether Lairson acted knowingly or intentionally or recklessly. The trial court said it had "spent considerable time" thinking about this issue and was inclined not to instruct the jury on reckless homicide because:

> My recollection and pretty strong recollection [of Lairson's interview with the detective] is that when asked about well, could you have done something, and then [she] fell in the shower, no, she didn't fall. Now, whether or not she fell when he went and laid down, he didn't know, but at that point, the Defendant wouldn't be doing anything or participating in any kind of

---

[1] The State also charged Lairson with strangulation and aggravated battery but later dismissed those charges.

> reckless act, so I am also left with the fact that from the pathologist, there are numerous blunt force trauma injuries.
>
> * * * * *
>
> The Defendant never really talks about making any reckless actions on - on the events in question. What he talks about is basically not being involved in that, not causing this - this death.

*Id.* at 93, 95. The court took a short recess to consider the issue more and then returned to the bench to announce that it would not instruct the jury on reckless homicide. The jury found Lairson guilty of murder.

[11] At the sentencing hearing, evidence was presented that Lairson had five misdemeanor convictions from Ohio, including a domestic-violence conviction, and one felony conviction from Ohio for Level 1 felony aggravated burglary with a firearm. Lairson was paroled for this felony in December 2016 and committed this offense while he was on parole. In addition, Lairson had two probation violations. The trial court found two aggravators, Lairson's criminal history and the fact that he committed this offense while on parole, and one mitigator, Lairson's expression of remorse. Finding that the aggravators outweigh the mitigator, the trial court sentenced Lairson to sixty years, all executed.

[12] Lairson now appeals.

# Discussion and Decision

## I. Reckless-Homicide Instruction

[13] Lairson first contends that the trial court erred in refusing to instruct the jury on reckless homicide as a lesser-included offense of murder. Trial courts use a three-part test to determine whether to instruct the jury on a lesser-included offense: whether the lesser-included offense is inherently included in the crime charged; if not, whether the lesser-included offense is factually included in the crime charged; and, if either, whether a serious evidentiary dispute exists where the jury could conclude that the lesser offense was committed but not the greater. *Wright v. State*, 658 N.E.2d 563, 566-67 (Ind. 1995). When an instruction is refused on grounds that a serious evidentiary dispute does not exist, we review only for an abuse of discretion. *Young v. State*, 699 N.E.2d 252, 255 (Ind. 1998), *reh'g denied*. It is reversible error for a trial court not to give an instruction, when requested, on an inherently or factually included lesser offense if there is a serious evidentiary dispute. *Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012).

[14] A person who knowingly[2] or intentionally[3] kills another human being commits murder, Ind. Code § 35-42-1-1, while a person who recklessly[4] kills another human being commits reckless homicide, Ind. Code § 35-42-1-5. Reckless homicide is an inherently included offense of murder, as the only element distinguishing the two is the mens rea. *Miller v. State*, 720 N.E.2d 696, 702 (Ind. 1999); *McDowell v. State*, 102 N.E.3d 924, 931 (Ind. Ct. App. 2018), *trans. denied*.

[15] Lairson argues that a serious evidentiary dispute exists as to whether he acted knowingly or intentionally or recklessly given the evidence he had acted violently toward Tylissa in the past (including four or five days earlier) but she didn't die and he said he loved Tylissa and wanted a future with her. We, however, agree with the trial court that no serious evidentiary dispute exists as to Lairson's mens rea because he consistently claimed during his interview with the detective that any slap or push was minor—just "small stuff"—and couldn't have caused Tylissa's death. Instead, he blamed Tylissa's death on being too drunk and falling, alcohol poisoning, or cancer—all of which the forensic pathologist ruled out. Indeed, the autopsy showed that Tylissa died from force far beyond what Lairson admitted. More specifically, Tylissa died from blunt-

---

[2] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[3] "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." *Id.* at (a).

[4] "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." *Id.* at (c).

force trauma to her abdominal cavity, which caused a "large" laceration to her mesentery, and from blunt-force trauma to her head, which caused bleeding over the surface of her brain. Tr. Vol. III p. 235. These brutal injuries entirely contradict a reckless mens rea. *See Atkinson v. State*, --- N.E.3d ---, ---, 2020 WL 3865980 (Ind. Ct. App. July 9, 2020) (concluding that the trial court did not err in refusing to instruct the jury on reckless homicide because the four-year-old victim's "injuries were so severe that no reasonable person could have found the injuries to have been inflicted only recklessly"), *trans. pending*; *McDowell*, 102 N.E.3d at 932 (holding that a reckless-homicide instruction wasn't required because to "beat someone as severely as [the victim] was beaten goes well beyond the realm of acting recklessly"). The trial court did not abuse its discretion in refusing to instruct the jury on reckless homicide.

## II. Inappropriate Sentence

[16] Lairson next contends that his sixty-year sentence is inappropriate and asks us to revise it under Indiana Appellate Rule 7(B) to the advisory term of fifty-five years. Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)).

Because we generally defer to the judgment of trial courts in sentencing matters, defendants must persuade us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

[17] A person who commits murder shall be imprisoned for a fixed term of between forty-five and sixty-five years, with an advisory term of fifty-five years. Ind. Code § 35-50-2-3. The trial court sentenced Lairson to an above-advisory term of sixty years.

[18] Lairson concedes that the nature of the offense was "egregious." Appellant's Br. p. 15. Indeed, Lairson, an ex-boxer, violently beat his girlfriend, causing her brain and abdominal cavity to hemorrhage. Nevertheless, he argues that his sentence is inappropriate in light of his character. Lairson acknowledges he was on parole during this offense and has a criminal history, including a serious felony and domestic battery. However, he claims that, given other considerations, such as that he expressed remorse and behaved well during trial, "it would not have been inappropriate for the Trial Court to conclude that an advisory sentence of fifty-five (55) years was proper." *Id.* at 16. But the question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). And given the egregious nature of this offense and Lairson's history of violent crimes, he has failed to persuade us that his sixty-year sentence is inappropriate. We therefore affirm his sentence.

[19] Affirmed.

Bailey, J., and Baker, Sr.J., concur.